### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| CENTENNIAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 07-63-B-H |
| | ) | |
| ROBERT PATTERSON, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM DECISION ON APPLICATION FOR ATTORNEY'S FEES

The defendant in this declaratory judgment action, Robert Patterson, seeks to recover his attorney fees and costs incurred in defending this action, including the appeal taken herein by the plaintiff, his professional liability insurer, and in the underlying action in which the plaintiff refused to provide a defense. The plaintiff "does not dispute Defendant's right to reasonable attorney's fees," Surreply Memorandum of Law in Opposition to Defendant's Application for Attorney's Fees ("Surreply") (Docket No. 60) at 1, but contends that a large part of the $22,159.72 sought by the defendant is not reasonable. With a modest downward adjustment for certain of the defendant's costs, I grant the defendant's application.

### I. Factual and Procedural Background

The plaintiff brought this action on May 14, 2007, Docket No. 1, seeking a declaratory judgment to the effect that it had no duty to defend its insured, the defendant, in an action first brought against him and others by Carol Murphy, *pro se*, in this court (the "Murphy action") and then transferred to the District of Rhode Island. The defendant's attorney convinced the state of

1

Maine, which was providing a defense to several other defendants in the Murphy action, to represent the defendant as well, until the plaintiff provided a defense.  The plaintiff never provided the defendant with a defense in that action.  The Murphy action was eventually dismissed.

After the Murphy action was dismissed, the plaintiff approached the defendant, seeking his agreement to a dismissal of this action with prejudice.  The defendant declined, unless the plaintiff first reimbursed him for the costs he had then incurred in connection with both actions.  The plaintiff responded with an offer to pay approximately half of the fees and costs incurred by the defendant up to that date, provided that the defendant signed a waiver of coverage under the policy should any further action be brought against him by Murphy.  The defendant offered to accept more than half but less than all of his incurred costs but refused to sign the requested waiver.

The plaintiff then moved to dismiss this action, contending that the dismissal of the Murphy action had rendered this action moot.  The plaintiff's motion to dismiss was denied.  Docket No. 19.  The defendant then filed a motion for summary judgment, Docket No. 20, and the plaintiff filed a cross-motion for summary judgment, Docket No. 26.  Magistrate Judge Cohen recommended that the defendant's motion be granted.  Docket No. 38.  The court adopted that recommended decision.  Docket No. 42.

Undeterred, the plaintiff then appealed to the First Circuit Court of Appeals, Docket No. 44, which denied the appeal on the briefs.  *Centennial Ins. Co. v. Patterson*, 564 F.3d 46, 54 (1st Cir. 2006).

## II.  Discussion

Under Maine law, when an insured prevails in a declaratory judgment action that determines an insurer's duty to defend the insured, the insurer must pay court costs and reasonable attorney's fees.  *Foremost Ins. Co. v. Levesque*, 2007 ME 96, ¶ 7, 926 A.2d 1185, 1188; 24-A M.R.S.A. § 2436-B(2).

The plaintiff does not challenge the hourly rates charged by the defendant's lawyer and his firm.  It argues, first, that the defendant may not recover because he refused to agree to the dismissal of this action "even though [he] had incurred only $131[1] in defending the *Murphy* case" and "there was no ongoing requirement to litigate the duty to defend the *Murphy* case," so any fees incurred thereafter are unreasonable;[2] second, that the billing records indicate excessive legal research "into Maine case law pertaining to an insurer's duty to defend" when there was "abundant case law" on this issue; third, any fees incurred before May 14, 2007, when this action was initiated, "could not have been incurred in litigation subject to the requirements of 24-A M.R.S.A. § 2436-B"; and fourth, the telephone calls, travel expense, and legal research service costs included in defense counsel's bill are "not the type of costs authorized by the statute," and that $294.22 "may not be considered."  Opposition at 1-3.

### A.  The Defendant's Refusal to Dismiss

The first argument raised by the plaintiff has already been rejected by this court, in its denial of the plaintiff's motion to dismiss on the ground of mootness.  *See* Docket Nos. 13 & 19. The plaintiff cites no authority in support of its implicit argument that the defendant is not entitled to recover the attorney fees and costs he incurred after the Murphy case was resolved

---

[1] The plaintiff variously refers to this sum as $131, Memorandum of Law in Opposition to Defendant's Application for Attorney's Fees ("Opposition") (Docket No. 53) at 2, and $117, Surreply at [4].  The bill submitted by the defendant (Exh. 2 to Docket No. 49) shows a total of $120 (asterisked entries).
[2] The plaintiff specifies August 23, 2007, as the date after which the defendant's attorney fees should not be recoverable for this reason.  Opposition at 2.

3

because he refused to agree to dismissal of this coverage action on the plaintiff's terms, that is, without recovering all of the fees he had already incurred and with a waiver of coverage for any further claims that might be brought against him by Murphy.  The plaintiff's argument could only be persuasive if it had agreed to make the defendant whole at that time.  It did not do so, and its argument thus fails.

## B.  Excessive Legal Research

With respect to the second argument, the plaintiff fails to point out which entries in the bill from the defendant's attorney show excessive legal research, or to suggest how many hours of legal research would have been reasonable, despite two opportunities to do so, in its Opposition and in its Surreply, for which as to the latter the court granted it leave to file.  In any event, the bill from the defendant's attorney shows 16.8 hours of research by a part-time attorney whose work was billed at a rate substantially below that of the attorney who represented the defendant throughout both proceedings, 10 hours of research by a different attorney whose work was billed at $25 per hour more than that of the first but still well below the rate of the attorney who represents the defendant in court, and only 4.2 hours of research by the attorney who represents the defendant here.  Invoice, Exh. 2 to Docket 49.[3]  Without more, this total does not appear to me to be excessive on its face for a case like this one.

## C.  Legal Services Predating Action

The plaintiff also contends that any charges made for legal services before the date on which this action was filed may not be recovered under 24-A M.R.S.A. § 2436-B.  Opposition at 2-3.  It asserts that these costs "could not have been incurred in litigation subject to the requirements of 24-A M.R.S.A. § 2436-B."  *Id*. at 3.  But, the statute cannot be read to make

---

[3] In making these calculations, I have included the full amount of time from any entry on the bill that mentions research, even though many of these entries list non-research activities as well.

such a distinction.  It provides only that "[i]n an action pursuant to Title 14, chapter 707 to determine an insurer's contractual duty to defend an insured under an insurance policy, if the insured prevails in such action, the insurer shall pay court costs and reasonable attorney's fees."

It is obvious from the bill submitted by the defendant's attorney that the costs and fees incurred before this action was filed were incurred in the course of planning and preparing for the defendant to bring a declaratory judgment action on the issue of the plaintiff's duty to defend the defendant in the Murphy case.  Invoice, Exh. 2 to Docket 49, dates between 2/20/2007 ("Review materials . . . in preparation for duty to defend research") and 5/10/2007 ("Final preparation of complaint against Centennial to establish its duty to defend Dr. Patterson").  The mere fact that the plaintiff beat the defendant to the federal courthouse in initiating a declaratory judgment action should not deprive the defendant of the opportunity to recover all of his costs once he was ultimately successful.  An insured is not required to read his insurer's mind or to wait until his insurer files a declaratory judgment action, if the insurer does so at all, once the insurer has denied the insured coverage for an ongoing action against the insured.

Before the enactment of 24-A M.R.S.A. § 2436-B in 2001, the Maine Law Court held, as a matter of common law, that an insured who prevails in a coverage dispute with an insurer "renders [the insurer] liable to pay such damages as will place the insured in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning." *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354-55 (Me. 1996).

Nothing in the language of section 2436-B even suggests that it is intended to overrule or amend this precept of common law.  The statute is certainly not inconsistent with the Law Court's pronouncement.  In this case, depriving the defendant of reimbursement for activities

reasonably undertaken by his lawyers before the plaintiff beat him to the courthouse door would not leave him in a position "equally as good" as it would have been had the plaintiff properly provided him with the defense in the Murphy action that was required by Maine law and the terms of the policy at issue.

### D.  Permissible Costs

Finally, the plaintiff argues that the costs itemized on the defense attorney's bill, for telephone calls, Westlaw charges, and mileage and travel expenses, are not within the meaning of "court costs" as that term is used in the statute.  Opposition at 3.  The defendant responds that these are "minimal and routine charges for costs and expenses typically and ordinarily billed to clients and collected as part of 'attorney's fees,' and payment should be ordered . . . to make Dr. Patterson 'whole.'"  Defendant's Response to Plaintiff's Memorandum of Law in Opposition to Defendant's Application for Attorney's Fees ("Reply") (Docket No. 54) at 8.  No case law interpreting section 2346-B in this regard has been reported, but courts have traditionally differentiated between "court costs" and telephone charges or travel expenses.  *See, e.g., International Paper Co. v. Frame*, 67 Fed.Appx. 251, 2003 WL 21195497 (5th Cir. May 6, 2003), at *6 (Texas law); *Guesthouse Int'l Franchise Sys., Inc. v. British Am. Props. MacArthur Inn, LLC*, 2009 WL 792570 (M.D. Tenn. Mar. 23, 2009), at *8 (listing court costs, filing fees, copies, on-line research, travel as separate items).

While it may be true that such costs are typically billed by lawyers to their clients, it is the statutory language that governs here.  I conclude that the challenged costs of telephone calls, on-line legal research, and travel, a total of $ 219.51,[4] may not be recovered by the defendant,

---

[4] The parties both refer to the total billed for these items as $294.22, Opposition at 4, Reply at 8, but that figure includes charges for postage and copying in the amount of $74.71 that are not properly characterized as telephone calls, on-line research, or travel.  Exh. 2 to Docket No. 49 at [8]-[9].

applying the traditional distinction between "court costs" and telephone charges, Westlaw charges, and travel expenses.

### III. Conclusion

For the foregoing reasons, the defendant's application for attorney's fees and costs be **GRANTED** in the amount of $ 21,940.21.

Dated this 21st day of July, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge